# GAMMETER *v.* NEIDICH.

# NEIDICH *v.* GAMMETER.

# NEIDICH *v.* LIEBENTHAL.

# LIEBENTHAL *v.* NEIDICH.

---

PATENTS; INTERFERENCE; REDUCTION TO PRACTICE; ABANDONED EXPERI-
MENT; MASTER AND SERVANT; DILIGENCE.

The testimony in four interferences involving the invention of a device adapted to be attached to the rotary drum of a duplicating machine for the purpose of printing vertical lines on the sheets passed through the machine, was reviewed, and decisions of the Commissioner of Patents holding that an attempted reduction to practice by one of the parties was an abandoned experiment; that the relation of employer and employee existed as between two of the parties; that

the employer was entitled to the result of the labor of the employee, and that one of the parties had exercised diligence in reducing to practice,—were *affirmed.*

Nos. 1022, 1023, 1024 and 1025.  Patent Appeals.  Submitted March 15, 1916.  Decided April 24, 1916.

HEARING on appeals from decisions of the Commissioner of Patents in interference proceedings.                    *Affirmed.*

The facts are stated in the opinion.

*Mr. Albert H. Bates* for Gammeter and Neidich.

*Mr. Arthur E. Paige* for O'Kane and Liebenthal.

*Mr. H. F. Riley* for Liebenthal.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The decisions appealed from in this case are in four interferences, numbered, respectively, 36,042, 36,322, 36,321, and 36,522, all relating to the same subject-matter, which is a device adapted to be attached to the rotary drum of a duplicating machine for the purpose of printing vertical lines on the sheets passed through the machine.  The drums of such machines are made up of parallel rails with overhanging edges, thus providing longitudinal undercut channels in which type is mounted.  The device in controversy comprises in general an arcual rule strip which extends across the parallel rails of the drum and is held in place between the type.  The issues of the interferences involve certain details in the means for fastening and supporting the rule strip.

The parties to the several interferences are Herman G. Liebenthal, who has a patent issued December 31, 1912, upon an application filed October 11, 1912; Samuel A. Neidich, application filed April 10, 1913; Katherine R. O'Kane, application

filed June 12, 1913; and Harry C. Gammeter, application filed July 21, 1913. The American Multigraph Company is the assignee of Neidich and Gammeter and O'Kane owns the Liebenthal patent. All four parties were included in interference No. 36,042. The issue involved in each is the following:

"In a duplicating machine, the combination, with a rotary printing drum having a plurality of undercut channels in its periphery, of type having flanges fitted in said channels; and a rule strip having a printing surface curved in concentric relation with said drum, held between said flange type, and having lugs fitted in said channels."

Interference 36,322 includes Neidich and Liebenthal, and the issue declared therein is the following:

1. In a duplicating machine, the combination with a rotary printing drum having a plurality of undercut channels in its periphery, of type having flanges fitted in said channels; and a rule strip having a printing surface curved in concentric relation with said drum, held between said flanged type, having lugs fitted in said channels and having flanges engaged by the overhanging ledges in channels.

2. In a duplicating machine, the combination with a rotary printing drum having a plurality of undercut channels in its periphery, of type having flanges fitted in said channels; and a rule strip having a printing surface curved in concentric relation with said drum, held between said flanged type, having supporting flanges extending laterally upon opposite sides of said printing surface and bearing upon said drum, and lugs on said rule strip fitted in said channels and having flanges engaged by the overhanging ledges in said channels.

Interference 36,521 includes Gammeter, Neidich, and O'Kane, and has the following issue:

1. In a duplicating machine, the combination, with a rotary printing drum having a plurality of undercut channels in its periphery, of type having flanges fitted in said channels; and a rule strip having a printing surface curved in concentric rela-

tion with said drum, having means connecting it with said drum independently of said type.

2. In a duplicating machine, the combination, with a rotary printing drum having a plurality of undercut channels in its periphery, of type having flanges fitted in said channels and a member having a printing surface curved in concentric relation with said drum, having means connecting it with said drum independently of said type.

Interference 36,522 includes Gammeter, Neidich, and O'Kane, and the issue therein is the following:

1. In a duplicating machine, the combination, with a rotary printing drum having a plurality of undercut channels in its periphery, of type having flanges fitted in said channels, and a rule strip having a printing surface curved in concentric relation with said drum held between said flanged type having supporting flanges extending laterally upon opposite sides of said printing surface and bearing upon said drum, and lugs on said rule strip fitted in said channels.

2. In a duplicating machine, the combination, with a rotary printing drum having a plurality of undercut channels in its periphery, of type having flanges fitted in said channels, and a rule strip having a printing surface curved in concentric relation with said drum held between said flanged type and having a supporting flange extending laterally and bearing upon said drum.

By stipulation of the parties the evidence taken in 36,042 was to be used in all the cases, and it was reviewed in 36,042, which was regarded as the one of greatest importance.

The Examiner of Interferences in this case awarded priority to O'Kane of all the counts.

Gammeter alleged conception and reduction to practice in the year 1906. The Examiner of Interferences held that Gammeter was entitled to conception in 1906, but denied his reduction to practice, holding that from the evidence and all the surrounding circumstances that his alleged reduction to practice was but an abandoned experiment. He then considered the

proofs on behalf of O'Kane and Liebenthal. O'Kane, who was the proprietor of a printing establishment in · Philadelphia, using a number of multigraphs, claimed conception of the idea of the vertical rule for use in said machines and reduction to practice on July 8, 1910. In the execution of this idea she used a string which was mounted on spacing type and held at each end by rubber plugs inserted in the channels of the drum. This construction did not conform to the issue, and was held not to be reduction to practice. The second construction by O'Kane for printing vertical lines was a strip of thin metal on which was mounted a round wire, both strip and wire had the ends cut off to engage in the channels of the drum for holding the rule in place. It was held that this was used in the latter part of the year 1910, but not a reduction to practice of the issue in 36,522, which includes a flange or flanges on the rule strip, but was held to be a reduction to practice in 36,042 in which the issue merely requires that the rule strip be provided with lugs fitted in the channels or means for connecting it with the drum, the bent ends of the wire and strip being believed to respond to that issue. Although it responded to the issue it was held to be an abandoned experiment.

After this Miss O'Kane employed Liebenthal early in 1911, who, at her suggestion, made a flat rule strip which did not respond to the issues of the interferences. This strip did not hold securely, and Liebenthal produced for O'Kane a brass rule with a base flange, another with straight projections, and another with base flanges. These were made in August, 1911, at which time Liebenthal had entered into the employ of O'Kane. In February, 1912, steps were taken to procure the manufacture of these last rules, but nothing was accomplished until the latter part of 1912. Liebenthal applied for a patent on this construction October 11, 1912. For the services of the patent solicitor in this case O'Kane paid the fees. It was held that, because of the relation of employer and employee, O'Kane was entitled to anything done by Liebenthal which was merely ancillary to the invention he was employed to develop.. This entitled her to all

the devices of Liebenthal except the rule with two base flanges, which is involved in interference 36,322. Liebenthal has conceded to O'Kane the subject-matter covered by the claims of his patent 2, 3, 4, and 7. This concession was held to cover also 6, which is broader than claim 7, and claim 2 is more limited than 6. O'Kane was held to be the inventor of the issue in 36,042. Early in 1913 O'Kane's Commercial Rule was put upon the market.

Neidich was connected with a company called the Flexotype Company, which was afterward sold to the American Multigraph Company, and Neidich has been since in the employ of that company. The Flexotype Company used a flexible blanket for its work, which was to be withdrawn and laid flat for file. Neidich's Bridgeport Brass Rule was used, but was not entirely satisfactory. Next Neidich produced the Lino-Tabler Rule in August, 1911. This rule was considered by the Examiner of Interferences not to embody the issue. His Stamped Rule was held to involve the issue, and a number were sold to the Southern Railway Company in October, 1911. The evidence of use by the Southern Railway Company was held to be insufficient by the Examiner of Interferences. He further found that neither Gammeter nor Neidich was entitled to reduction to practice until their filing date. He finally held that O'Kane had been diligent in the perfection of her invention when Neidich entered the field, and awarded priority to her of the subject-matter of 36,042.

The Examiners in Chief, to whom appeal was taken by Gammeter and Neidich, affirmed the decision of the Examiner of Interferences. They held that Neidich was entitled to conception as early as March 13, 1911. They also held that the Neidich rule had been reduced to practice in October, 1911, by the Southern Railway Company, and held that as to interference 36,521 and count one of interference 36,322 he was entitled to March 13, 1911, and August 24, 1911, for his conception of the issue in 36,042, but as to interference 36,322 he did not allege conception until August 10, 1911. They awarded prior-

ity to O'Kane as having been the first to conceive, and diligent in the perfection of her invention and reduction to practice when her adversaries entered the field.

The Commissioner, agreeing with the Examiners in Chief, affirmed their decision, awarding priority to O'Kane.

In interference 36,522 the Examiner of Interferences awarded priority to Liebenthal of both counts of the issue. The Examiners in Chief reversed this decision as to count 1, and affirmed it as to count 2. Appeals by each party were taken to the Commissioner, who affirmed the decisions of the Examiners in Chief.

All parties have appealed from the final decisions.

The testimony has been reviewed at length, and with fairness, in the decision made in No. 36,042. Having carefully examined the testimony, which it is unnecessary to again review, we are not convinced that any error has been shown in the decisions of the Commissioner, and they are affirmed.

The clerk will certify this decision to the Commissioner of Patents.                                    *Affirmed.*